United States District Court
Southern District of Texas
**ENTERED**
June 12, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| The Johns Law Firm, LLC, | § § § | Case No. 4:22-cv-01877 |
| *Plaintiff,* | § § | Consolidated with: |
| v. | § § § | No. 4:22-cv-01441<br>No. 4:22-cv-03458<br>No. 4:22-cv-04016 |
| Angela Pawlik, | § § | |
| *Defendant.* | § | |

## MEMORANDUM AND RECOMMENDATION

In this consolidated action, Plaintiff The Johns Law Firm, LLC ("TJLF") filed a motion for partial judgment on the pleadings, seeking dismissal of Defendant Angela Pawlik's counterclaims under Fed. R. Civ. P. 12(c).[1] Dkt. 44 (amended version); *see also* Dkt. 25 (original Rule 12(c) motion). After considering the motion, response, Dkt. 41, reply, Dkt. 45, the live consolidated pleadings, and the applicable law, it is recommended that TJLF's amended motion for partial judgment on the pleadings be granted, and that Pawlik's counterclaims be dismissed. TJLF's original Rule 12(c) motion (Dkt. 25) should be denied as moot.

---

[1] As ordered by the Court, Dkt. 37, the parties filed consolidated pleadings and then amended their briefing on TJLF's motion to conform with those new pleadings. This memorandum therefore focuses on the amended versions of the Rule 12(c) briefing, which supersede the prior filings. *See* Dkts. 44 (amended motion), 41 (amended response), 45 (amended reply).

## Background

The dispute concerns TJLF's claimed entitlement to a portion of the life insurance proceeds recovered by its former client, Pawlik, in a prior interpleader suit that was resolved in the Western District of Texas: *Primerica Life Insurance Co. v. Pawlik, et al.*, No. 7:20-cv-00063-DC (W.D. Tex.) (hereinafter the "Underlying Suit"). The following facts are drawn from Pawlik's pleading and documents incorporated therein.

In May 2020, Pawlik signed an agreement with "The Johns Law Firm, LLC" to represent her in the Underlying Suit. Dkt. 41-1 at 2 (Exhibit A) (hereinafter the "Fee Agreement"). At the time, TJLF had three members: Jeremiah Johns, Tony Hernandez, and Donovan Francis. *See* Dkt. 39 ¶ 11. Johns was Pawlik's sole attorney contact at TJLF, although an associate, Blair Brogan, also appeared as counsel in the Underlying Suit. *Id.* ¶¶ 9-10.

The Fee Agreement states that Pawlik would pay TJLF 40% of the gross recovery in the Underlying Suit if it were "resolved after 151 days after signing" the Agreement. Dkt. 41-1 § II. The Fee Agreement also granted TJLF a lien on any recovery to secure any attorneys' fees owed. *Id.* § IV.

Other provisions in the Fee Agreement addressed TJLF's rights to the contingency fee if certain circumstances were to occur. Section VIII states that Pawlik's discharge of TJLF, or her substitution of TJLF with other counsel, would not affect TJLF's right to recover its contingency fee. *Id.* § VIII

2

("Attorneys shall be entitled to attorneys' full contingent share of any settlement or judgment ... even though client discharges attorneys or obtains a substitution for attorneys before such settlement is made or judgment is had."). On the other hand, Section IX provides that TJLF's decision to withdraw its representation extinguishes its right to the contingency fee. *Id.* § IX (providing that TJLF "may withdraw from client's representation at any time" but "in the event of such withdrawal attorneys shall be entitled to no fee pursuant to Section II of this agreement").

Disputes arose between Johns and his co-members of TJLF. According to Johns, the other three TJLF attorneys formed a competing law firm and improperly withdrew TJLF account funds to fund the new venture. Dkt. 39 ¶¶ 11-12. Hernandez and Francis then removed Johns as manager of TJLF. *Id.* ¶ 13. Johns also alleges that Hernandez, Francis, or both attempted to block Johns's communications with clients. *Id.* ¶¶ 15-18.

On November 30, 2020, Johns withdrew from TJLF. *Id.* ¶ 19. That same day, Brogan filed a motion to withdraw in the Underlying Suit. *Id.* ¶ 20. Brogan allegedly told Pawlik that her withdrawal was prompted by the fact that she no longer worked for TJLF. *Id.* ¶ 21.

In December 2020, Pawlik engaged Johns's new firm (Johns Law Firm, PLLC) to represent her in the Underlying Suit. Dkt. *Id.* ¶ 26. Johns, however,

maintains that his former TJLF co-members continued making threats and hacked into his email and phone accounts. *Id.* ¶ 28.

The Underlying Suit ultimately settled. *Id.* ¶ 30. A few hours after the parties filed a stipulation of dismissal pursuant to the settlement, TJLF filed a motion to intervene in the case. *Id.* ¶ 32. According to Johns, TJLF's motion falsely represented how long TJLF had worked on Pawlik's case, the costs TJLF had incurred, and the reasons why TJLF decided to seek intervention at that time. *Id.* The court denied TJLF's request to intervene as untimely. *Id.* ¶ 33 (citing April 3, 2022 order). The next day, and pursuant to the settlement, the court entered an order to disburse the $1 million in interpleaded funds from the court's registry, with $850,000 of the proceeds plus interest to be disbursed to Pawlik and to Johns's new firm. *Id.* ¶¶ 30, 33; *see also id.* ¶ 15 (admitting this allegation in Dkt. 38 ¶ 15); Dkt. 1-3 (Ex. 2 to TJLF's original petition, attached to notice of removal).

TJLF then filed suit in state court in Harris County, Texas, seeking a writ of garnishment against Pawlik, as debtor, and Johns and his new firm, as garnishee. *Id.* ¶ 35. TJLF's application, which allegedly contained certain misrepresentations, sought $340,000 of the proceeds from the settlement of the Underlying Suit (*i.e.*, 40% of the $850,000 recovery). *See id.* ¶ 35-36. Pawlik removed the case to the wrong federal district, Dkt. 1, which resulted in an order transferring the suit to this Court, Dkt. 9.

The parties filed multiple related suits, all of which were consolidated with this first-filed case. Dkt. 21. In its consolidated amended complaint, TJLF asserts that Pawlik breached the Agreement by terminating TJLF without good cause, thereby entitling TJLF to its 40% contingent fee. Dkt. 38 ¶¶ 19-21. Alternatively, TJLF seeks the reasonable value of its services in quantum meruit. *Id.* ¶ 22.

Pawlik responded with several counterclaims: (1) a claim for declaratory relief, alleging that TJLF's withdrawal from the Underlying Suit pursuant to Section IX of the Fee Agreement forfeited its right to the contingency fee, and that Pawlik had not wrongfully discharged TJLF; (2) an abuse of process claim based on TJLF's filing of the garnishment action in Texas state court; and (3) claims for breach of fiduciary duty, negligence, and gross negligence. Dkt. 39 ¶¶ 39-75. The fiduciary duty and negligence-related claims allege that TJLF "attempt[ed] to prevent Pawlik from communicating with her attorney [*i.e.*, Johns]"; "inexcusably delay[ed]" its request to intervene in the Underlying Suit until after that suit had settled; and made "factual misrepresentations and purposeful omissions" in its court filings when seeking recovery of its contingency fee. *Id.* ¶¶ 66-75.

TJLF filed a motion for judgment on the pleadings, seeking dismissal of Pawlik's counterclaims under Rule 12(c). Dkt. 25, 44. Pawlik responded, Dkt.

5

26, 41, and TJLF filed a reply, Dkt. 27, 45. The motion is ripe for resolution.[2]

## Legal standard

A party may move for judgment on the pleadings "after the pleadings have closed—but early enough not to delay trial ...." Fed. R. Civ. P. 12(c). "The standard for deciding a Rule 12(c) motion is the same standard used for deciding motions to dismiss pursuant to Rule 12(b)(6)." *Q Clothier New Orleans, L.L.C. v. Twin City Fire Ins. Co.*, 29 F.4th 252, 256 (5th Cir. 2022).

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, "the complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim." *See Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (analyzing *Twombly*, 550 U.S. at 555-56).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court can consider all documents referenced in the complaint and central to the plaintiff's claim, as well as any facts for which judicial notice

---

[2] In the interim, Pawlik filed a motion for partial summary judgment on TJLF's claims for relief. Dkt. 31, 42. That motion will be addressed in a separate memorandum and recommendation.

is appropriate. *See Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (judicial notice of publicly available documents in public record); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (considering terms of contracts that were not attached to, but were referenced in, the complaints).

## Analysis

### I. Pawlik's declaratory judgment counterclaim adds nothing to the suit, warranting its dismissal.

TJLF first seeks dismissal of Pawlik's counterclaim for declaratory relief as duplicative of TJLF's affirmative claims for breach of contract and quantum meruit. Dkt. 44 at 4-5. Pawlik disputes that position, arguing that TJLF's claims do not "request interpretation" of the Fee Agreement. Dkt. 41 at 7.

Federal courts have "substantial discretion in deciding whether to declare the rights of litigants" under the Declaratory Judgment Act. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). A guiding consideration is whether a declaratory judgment "will serve a useful purpose in clarifying and settling the legal relations" at issue. *Env't Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.*, 824 F.3d 507, 523 (5th Cir. 2016). For that reason, "[c]ourts in the Fifth Circuit ... regularly reject claims for declaratory judgment that seek nothing more than resolution of issues already stated in the lawsuit." *Nextera Energy Mktg. LLC v. Shell Energy N. Am. (US) LP*, 2023 WL 2541964, at *3 (S.D. Tex. Mar. 16, 2023). This includes declarations that either state the inverse of the opposing

party's claims or restate affirmative defenses. *See, e.g.*, *id.* at *3-4 (dismissing request for declaration that overlapped with party's affirmative defenses); *Ecoquij-Tzep v. Le Arlington, Inc.*, 2018 WL 1737658, at *5 (N.D. Tex. Apr. 10, 2018) (denying defendant's motion for leave to add a declaratory judgment counterclaim that "seeks resolution of matters that will already be resolved" as part of the plaintiff's claim "and is therefore redundant"). A request for declaratory judgment that adds nothing to an existing suit may be dismissed. *See Am. Equip. Co. v. Turner Bros. Crane & Rigging, LLC*, 2014 WL 3543720, at *3 (S.D. Tex. July 14, 2014) (citing *Pan-Islamic Corp. v. Exxon Corp.*, 632 F.2d 539, 546 (5th Cir. 1980)).

The parties' pleadings confirm that Pawlik's declaratory judgment counterclaim adds nothing to this suit. Her first theory asserts that, pursuant to Section IX of the Fee Agreement, TJLF forfeited its right to a contingency fee upon withdrawing from its representation of Pawlik in the Underlying Suit. Dkt. 39 ¶¶ 39-48. Yet in the same pleading, Pawlik also asserts, as an affirmative defense, that TJLF "withdrew from the Underlying [Suit] and, therefore, recovery is barred under Section IX of the [Fee] Agreement." *Id.* at 4 ¶ 2. Because Pawlik's requested declaratory relief duplicates her affirmative defense, it should be dismissed. *See, e.g.*, *Nextera Energy Mktg. LLC*, 2023 WL 2541964, at *3 (dismissing request for declaration that overlaps with the party's affirmative defenses).

8

Pawlik's second basis for declaratory relief mirrors TJLF's claims for relief. TJLF's breach of contract claim alleges that Pawlik discharged TJLF "without good cause," that TJLF "remained ready, willing, and able to continue its representation of [Pawlik] when it was discharged[,]" and that TJLF therefore is entitled to 40% of Pawlik's recovery in the Underlying Suit "under the terms of the Contingency Fee Agreement." Dkt. 38 ¶¶ 19-20. Pawlik's declaratory judgment allegations state the inverse, claiming that Pawlik did not "wrongfully discharge" TJLF as her counsel and alleging that TJLF committed certain acts that provided Pawlik cause for discharging TJLF as her counsel. Dkt. 39 ¶¶ 39-59.

Resolving TJLF's allegations that it was discharged without good cause will necessarily resolve Pawlik's contrary allegation that TJLF was properly discharged. The Court should therefore dismiss Pawlik's counterclaim as duplicative. *See, e.g.*, *Elepreneurs Holdings, LLC v. Benson*, 2021 WL 5140769, at *4 (E.D. Tex. Nov. 4, 2021) (dismissing declaratory judgment counterclaim that would "wholly resolvable by Plaintiffs' affirmative action for breach of contract"); *Am. Equip. Co.*, 2014 WL 3543720, at *5 (similarly dismissing declaratory judgment counterclaim that mirrored claim for breach of an indemnity agreement).

9

## II. Pawlik has not stated cognizable tort claims.

### A. Pawlik does not dispute that she failed to plead a plausible claim for abuse of process.

TJLF argues—and Pawlik does not dispute—that Pawlik's abuse of process claim is not actionable. Dkt. 44 at 5-7. The Court agrees.

In Texas, liability for abuse of process requires "improper use of the process *after* it has been issued. *Liverman v. Payne-Hall*, 486 S.W.3d 1, 5 (Tex. App.—El Paso 2015, no pet.) (emphasis added); *see also In re Dallas Roasdster, Ltd.*, 846 F.3d 112, 124-25 (5th Cir. 2017) (emphasizing this limitation, quoting *Davis v. West*, 433 S.W.3d 101, 110-11 (Tex. App.—Houston [1st Dist.] 2014, pet. denied)). The act of issuing or procuring process, "even if accompanied by malicious intent or without probable cause," is not enough. *Liverman*, 486 S.W.3d at 7. Yet here, Pawlik's allegations are limited to purported misrepresentations by TJLF when filing its state-court garnishment action. Dkt. 39 ¶¶ 60-66. Because Pawlik "fail[s] to allege an improper use of the process other than the mere institution of the civil action" itself, she has not stated a cognizable abuse-of-process claim. *See Detenbeck v. Koester*, 886 S.W.2d 477, 481 (Tex. App.—Houston [1st Dist.] 1994, no writ); *see also, e.g., In re Dallas Roadster, Ltd.*, 846 F.3d at 125 (abuse of process claim failed because it was based on conduct in obtaining a receivership, rather than alleged abuses after the receivership was granted).

### B. Pawlik's counterclaims for breach of fiduciary duty and negligence are not actionable.

TJFL also seeks dismissal of Pawlik's counterclaims for breach of fiduciary duty, negligence, and gross negligence. Dkt. 44 at 7-11. The conduct underlying those counterclaims falls into two categories: (a) TJLF's alleged interference with Johns's representation of Pawlik before TJLF was terminated or discharged as Pawlik's counsel; and (b) TJFL's post-termination attempts to recover compensation for its prior representation, including by seeking intervention in the Underlying Suit and filing an application for writ of garnishment. Dkt. 39 ¶¶ 66-75. These theories fail for different reasons addressed below.

#### 1. Pawlik has not adequately pleaded that TJLF's pre-termination conduct caused a cognizable injury.

TJLF asserts that Pawlik has not pleaded a plausible breach of fiduciary duty or negligence-based claim based on TJLF's conduct before the attorney-client relationship terminated. Dkt. 44 at 9-11. The Court agrees.

To recover for breach of fiduciary duty, a plaintiff must show (among other things) that the defendant's breach caused the plaintiff's injury or resulted in a benefit to the defendant. *Lindley v. McKnight*, 349 S.W.3d 113, 124 (Tex. App.—Fort Worth 2011, no pet.) (stating this element). Similarly, to recover for negligence, the plaintiff must sustain damages proximately caused

11

by breach of a legal duty. *See Rodriguez-Escobar v. Goss*, 392 S.W.3d 109, 113 (Tex. 2013) (stating elements).

Pawlik's counterclaims allege that TJLF attempted to interfere with Johns's communications with Pawlik before TJLF withdrew as her counsel. Nowhere, however, does Pawlik plausibly plead that the alleged interference detrimentally impacted the course of the Underlying Suit or actually impeded Johns from representing her in that suit.[3] Her conclusory allegations of harm are insufficient. *See* Dkt. 39 ¶ 76; *Iqbal*, 556 U.S. at 678. Nor has Pawlik asserted that TJLF obtained a financial benefit from its attempted interference. To the contrary, Pawlik's explicitly alleges that TJLF's attempted interference was unsuccessful, as Johns continued to represent Pawlik "despite the numerous distractions[,]" including through the eventual settlement of the Underlying Suit. Dkt. 39 ¶¶ 29-30.

---

[3] In response, Pawlik attaches an affidavit asserting that she "learned" of or was "informed" about TJLF's conduct and was "troubled" as a result. Dkt. 41-8 ¶¶ 9-14 (Exhibit H). This affidavit is not part of her pleading, and thus should not be considered when resolving TJLF's motion. *See Decker v. Routledge*, 2020 WL 291804, at *2 n.3 (S.D. Tex. Jan. 21, 2020) (refusing to consider plaintiffs' submission of an affidavit in response to a Rule 12(b)(6) motion to dismiss). Converting TJLF's Rule 12(c) motion into a motion for summary judgment is unwarranted, because the affidavit cannot rectify the deficiencies in Pawlik's claims. For instance, the affidavit still does not suggest that TJLF's conduct caused any compensable loss by affecting the disposition of the Underlying Suit. Also, merely asserting that TJLF's actions caused Pawlik worry, anxiety or stress is insufficient to meet the threshold for compensable emotional distress. *See, e.g., Parkway Co. v. Woodruff*, 901 S.W.2d 434, 445 (Tex. 1995) (plaintiff's statements reflecting "anger, frustration, or vexation ... do not support the conclusion that these emotions rose to a compensable level").

Thus, regardless of whether Pawlik adequately pleaded other elements of recovery, her failure to plausibly allege that TJLF caused any cognizable harm or obtained an illicit benefit defeats her breach of fiduciary duty and negligence claims premised on TJLF's pre-termination conduct. Her lack of a cognizable negligence theory further precludes recovery for gross negligence. *See, e.g.*, *Wortham v. Dow Chem. Co.*, 179 S.W.3d 189, 201 n.16 (Tex. App.—Houston [14th Dist.] 2005, no pet.) ("A plaintiff who cannot support a cause of action for negligence cannot succeed on gross negligence because a finding of ordinary negligence is a prerequisite to a finding of gross negligence.").

2. <u>TJLF's post-termination conduct is not actionable.</u>

TJLF further seeks dismissal of Pawlik's breach of fiduciary duty and negligence counterclaims targeting TJLF's conduct after their attorney-client relationship ended. Those allegations concern TJLF's conduct directed at Johns after TJLF's associate, Brogan, had withdrawn from the case. *See* Dkt. 39 ¶ 28 (alleging that TJLF members left notes at homes of clients, hacked into Johns's email account and phone/text accounts, sent inappropriate text messages to Johns, and delayed intervening in the Underlying Suit). Pawlik also asserts that TJLF "intentionally or negligently waited until September 10, 2021" to file a motion to intervene in the Underlying Suit and made misrepresentations both in that motion and in TJLF's subsequent state-court application for a writ of garnishment. *Id.* ¶¶ 32, 36, 69-71.

According to TJLF, none of this conduct is actionable, including because TJLF no longer owed a fiduciary duty or negligence duty to Pawlik.[4] Dkt. 44 at 8-9. Apart from attempting to distinguish TJLF's cited authorities on their facts, Pawlik asserts that TJLF's obligations to her did not cease even when their relationship became adversarial. Dkt. 5 at 12-14. But the case law below supports TJLF's position and precludes Pawlik's counterclaims.

Whether a defendant owes a duty presents a question of law. *Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 756 (Tex. 1998). In Texas, an attorney generally owes no fiduciary duty to its client once its representation of the client terminates. *See, e.g.*, *Lively v. Henderson*, 2007 WL 3342031, at *4 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (holding that "Henderson had no attorney-client relationship with JIMCO and thus owed JIMCO no fiduciary duty" because Henderson's representation of the client had ended); *Moody v. Greer, Herz & Adams LLP*, 2023 WL 2697889, at *10 (Tex. App.—Houston [1st Dist.] Mar. 30, 2023, no pet.) (attorney's threats to ruin his client financially and make him miserable were not actionable as breach of fiduciary duty because they occurred "after the attorney-client

---

[4] TJLF also invokes the judicial proceedings privilege, claiming that it prohibits Pawlik from suing for alleged misrepresentations in court filings that sought to collect TJLF's contingency fee. Dkt. 44 at 11-12. Given the Court's agreement with TJLF's other contentions, the Court declines to address the alternative question of whether the judicial proceedings privilege applies.

14

relationship had ended"). Courts have recognized a few exceptions, like an attorney's obligation to refund an unearned retainer, *Burnett v. Sharp*, 328 S.W.3d 594, 602 (Tex. App.—Houston [14th Dist.] 2010, no pet.), and the duty to maintain confidentiality of the client's information, *Jettal Cos., Inc. v. Hoover Slovacek LLP*, 2022 WL 906218, at *6-7 (Tex. App.—Houston [14th Dist.] Mar. 29, 2022, pet. denied) (collecting authorities).

Pawlik's allegations do not fall within any recognized exception to the general rule that an attorney's fiduciary duty terminates when the attorney-client relationship ends. TJLF's conduct after it had withdrawn from representing Pawlik therefore is not actionable as a breach of fiduciary duty.

Termination of the attorney-client relationship also forecloses characterizing TJLF's post-termination conduct as breach of any negligence duty. The Texas Supreme Court has refused to extend an attorney's duty to the performance of work for a non-client. *See Barcelo v. Elliott*, 923 S.W.2d 575, 577 (Tex. 1996). And "without an attorney-client relationship, there can be no duty[,]" which "ends the inquiry into whether liability may be imposed for negligence." *Brown v. McCleskey*, 1999 WL 795478, at *9 (Tex. App.—Amarillo Oct. 6, 1999, pet. denied).

Although Pawlik attempts to cabin these limitations to malpractice or other claims, *see* Dkt. 41 at 9-10, she articulates no basis for recognizing a fiduciary or other duty of care owed by an attorney to a former client for

15

analogous conduct after the attorney-client relationship concluded. For instance, Pawlik challenges TJLF's acts while seeking recovery of its contingency fee in the Underlying Suit and other proceedings. Because the parties were cast as adversaries, however, TJLF owed no fiduciary or negligence duty to Pawlik at that point. *See, e.g.*, *Stephenson v. LeBoeuf*, 16 S.W.3d 829, 836-37 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (attorney's representation of client did not give rise to a fiduciary duty with respect to subsequent attempts to collect unpaid fees after the attorney-client relationship ended); *Merrell v. Fanning & Harper*, 597 S.W.2d 945, 949-50 (Tex. Civ. App.—Tyler 1980, no writ) (law firm owed no duty to protect or care for plaintiff's property after the attorney-client relationship ended; "the parties were clearly in an adversary position" when the firm intervened, obtained a judgment for their fees, and levied on plaintiff's property).

Moreover, as concluded above, Pawlik has not plausibly alleged any harm resulting from TJLF's alleged attempted interference with her relationship with Johns, which Pawlik admits were unsuccessful. *See supra* Part II.B.1. That defect is equally fatal to her claims premised on TJLF's post-termination conduct. The breach of fiduciary duty, negligence, and gross negligence counterclaims are therefore barred and should be dismissed.

16

Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Plaintiff The Johns Law Firm, LLC's amended motion for partial judgment on the pleadings under Rule 12(c) (Dkt. 44) be **GRANTED**, and that Defendant Angela Pawlik's counterclaims asserted in Dkt. 39 be **DISMISSED**. It is further **RECOMMENDED** that Plaintiff's original motion for partial judgment on the pleadings (Dkt. 25) be **DENIED AS MOOT**. Plaintiff's claims for breach of contract and quantum meruit, as well as Defendant's motion for partial summary judgment (Dkt. 42), remain pending.

**The parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.** *Ortiz v. City of San Antonio Fire Dep't*, **806 F.3d 822, 825 (5th Cir. 2015).**

Signed on June 12, 2023, at Houston, Texas.

*[signature: Yvonne Y. Ho]*

Yvonne Y. Ho
United States Magistrate Judge