United States District Court
Southern District of Texas
**ENTERED**
January 12, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| The Johns Law Firm, LLC, | § § § | Case No. 4:22-cv-01877 |
| *Plaintiff,* | § § | Consolidated with: |
| v. | § § | No. 4:22-cv-01441 |
|  | § | No. 4:22-cv-03458 |
| Angela Pawlik, | § | No. 4:22-cv-04016 |
| *Defendant.* | § § § |  |

## **MEMORANDUM AND RECOMMENDATION**

Pending in this consolidated action are two motions for summary judgment, one filed by Defendant Angela Pawlik, Dkt. 57, and the other filed by Plaintiff The Johns Law Firm, LLC ("TJLF"), Dkt. 58. After carefully reviewing the motions, responses, Dkt. 59, 60, replies, 61, 62, the record, and the applicable law, it is recommended that TJLF's motion be granted with respect to its breach of contract claim, and that Pawlik's motion be denied.

## **Background**

As detailed in prior rulings, this dispute concerns TJLF's claimed entitlement to a portion of settlement proceeds recovered by its former client, Pawlik, in a prior interpleader suit, *Primerica Life Ins. Co. v. Pawlik, et al.*, No. 7:20-cv-00063-DC (W.D. Tex.) (the "Prior Suit").

On May 8, 2020, Pawlik signed an agreement (the "Fee Agreement") with "The Johns Law Firm, LLC" to represent her in the Prior Suit.  Dkt. 57-2 ¶ 2 (DX-A, Decl. of Angela Pawlik); Dkt. 57-3 (DX-B).  In the Fee Agreement, Pawlik agreed to pay TJLF 40% of her gross recovery if the Prior Suit were resolved more than 151 days after the Fee Agreement was executed.  Dkt. 57-3 § II.  Two other provisions specified that Pawlik would owe the contingency fee if TJLF were discharged, but not if TJLF withdrew:

## VIII.
## SUBSTITUTION OR DISCHARGE OF ATTORNEYS

Attorneys shall be entitled to attorneys' full contingent share of any settlement of or judgment on the claim for prosecution of which attorneys are retained even though client discharges attorneys or obtains a substitution for attorneys before such settlement is made or judgment is had.

## IX.
## WITHDRAWAL OF ATTORNEYS

Attorneys may withdraw from client's representation at any time, on reasonable notice to client, provided that in the event of such withdrawal attorneys shall be entitled to no fee pursuant to Section II of this agreement.

*Id.* §§ VIII, IX.

When the Fee Agreement was executed, TJLF had three members: Jeremiah Johns, Tony Hernandez, and Donovan Francis.  Johns, together with associate Blair Brogan, worked on Pawlik's case.  Dkt. 58-9 ¶ 6 (PX-9, Hernandez declaration).  The parties dispute whether Brogan or Johns performed the majority of the work.  *Compare* Dkt. 58-3 ¶ 5 (PX-3, Brogan

2

declaration, asserting that she primarily worked on the case, including by preparing summary judgment briefing), *and* Dkt. 58-9 ¶ 7 (PX-9, Hernandez declaration), *with* Dkt. 57-6 ¶ 14 (DX-E, Johns asserting that he "performed the overwhelming bulk of work" on the Prior Suit). But as lead counsel, Johns communicated with Pawlik about the case. *See* Dkt. 57-2 ¶¶ 7-8 (Pawlik's declaration); Dkt. 57-6 ¶ 14.

While the Prior Suit was pending, TJLF underwent an acrimonious break-up. Hernandez maintains that the relationship between Francis and him, on the one hand, and Johns, on the other, "became strained" after Francis and Hernandez discovered that Johns had solicited clients in a manner "that could expose the firm to claims of barratry." Dkt. 58-9 ¶ 8. Francis, Hernandez, and Brogan decided to dissociate from TJLF but continue working together. *Id.* ¶ 9. In October 2022, they filed paperwork to form a new firm, Brogan Francis Hernandez, LLC ("BFH"). *Id.* According to Hernandez, BFH was not operating at that time, as the three attorneys continued servicing TJLF's clients and winding up TJLF's affairs. *Id.*

Things at TJLF devolved rapidly. On October 26, 2020, Johns sent a form purporting to remove Hernandez as a member and manager of TJLF. *Id.* ¶ 10. Hernandez asserts that Johns lacked the authority to do so because Johns held only 39.5% of the membership interest. *Id.* Two days later, Johns locked Francis, Hernandez, and Brogan out of their TJLF email accounts and

3

the firm's document management system.  *Id.* ¶ 11; *see also* Dkt. 58-10 (PX-10, Johns's Nov. 2, 2020 email admitting "I suspended their email accounts").  The next day, Hernandez and Francis voted to remove Johns as a manager, but not a member, of TJLF.  Dkt. 58-9 ¶ 12; Dkt. 58-11 (PX-11, meeting minutes).

On October 30, 2020, Hernandez and Francis allegedly disabled Johns's access to the TJLF phone and text account that Johns used for client communications.  Dkt. 57-6 ¶ 5 (DX-E, Johns declaration).  The same day, Johns discovered that Hernandez and Francis had withdrawn $108,000 from the law firm's accounts.  *Id.* ¶ 5.  According to Hernandez, those funds were transferred to the IOLTA account of TJLF's outside counsel because of concerns that Johns would take the money.  Dkt. 58-9 ¶¶ 12, 22(e).  Johns ultimately withdrew the remaining funds ($62,745.45) from TJLF's account. Dkt. 58-12 (PX-12, Johns's December 4, 2020 email noting the withdrawal).

In the interim, Johns sent Brogan an email on November 20, 2020 ordering her to withdraw from all "joint matters" with "my clients" on which the two had worked, which included the Prior Suit.  Dkt. 58-14 (PX-14).  The email accused Brogan of failing to disclose to certain clients and opposing counsel her involvement in the new firm, BFH.  *Id.*

Brogan either forwarded Johns's email to Hernandez or otherwise told Hernandez about it.  That prompted Hernandez to respond on behalf of "LLC management" that Brogan was authorized "to communicate with any LLC

client or opposing counsel on any LLC matter" on which she and Johns had worked.  Dkt. 57-8 (DX-8, November 22, 2020 response).  Hernandez stated that, "[t]o our knowledge, Mr. Johns does not have any clients.  Rather, he is assigned lead counsel on behalf of the LLC for a handful of LLC clients." *Id.* Hernandez emphasized that that the firm would decide whether any clients "presently assigned to Mr. Johns" would be reassigned to other attorneys at TJLF.  *Id.*  But Hernandez asked Brogan to inform him if there were any such cases for which it would "make sense" for Brogan to "assume the lead counsel role." *Id.*  Hernandez also authorized Brogan to withdraw as co-counsel on any matter that she would prefer not to continue working on.  *Id.*

On November 30, 2020, Brogan filed a motion to withdraw in the Prior Suit.  Dkt. 58-3 ¶ 9; *see also* Dkt. 57-2 ¶ 17.  That day, Johns asked Pawlik to sign an engagement letter with his new law firm that would "allow [him] to continue to represent" her in the Prior Suit.  Dkt. 58-15 (PX-15).

On December 1, 2020, Pawlik executed an agreement with Johns stating that she wished to transfer her case to Johns's new law firm and directing TJLF "to immediately release my file materials in total to [Johns]" and his new firm, Johns Law Firm, PLLC.  Dkt. 58-16 (PX-16).  This agreement also stated that Johns would continue to represent Pawlik "in accordance with the terms of the original contract" signed with TJLF.  *Id.*

On December 7, 2020, Johns faxed a letter to Hernandez and Francis—backdated to November 30, 2020—withdrawing from TJLF.  Dkt. 58-13 at 2-3 (PX-13); *see also* Dkt. 58-9 ¶ 15.  Later that month, Hernandez and Johns exchanged text messages, with Johns accusing Hernandez of hacking into Johns's email account and Hernandez threatening to file a complaint against Johns for using the johnsfirm.com domain name.  Dkt. 57-7 (DX-F).  Johns filed a police report complaining of Hernandez's conduct.  Dkt. 57-10 (DX-I); *see also* Dkt. 57-6 ¶ 13.  Hernandez also sent a note to a former TJLF client who had transferred his case to Johns, claiming that Johns failed to communicate a settlement offer.  Dkt. 57-9 ¶ 7 (DX-H, Ryan White declaration); *see also* Dkt. 58-9 ¶ 22(j) (Hernandez maintaining that the note "was accurate").

In the Prior Suit, the district court subsequently ruled in Pawlik's favor and awarded her the full $1,000,000 held in the court's registry.  Dkt. 58-9 ¶ 24.  On September 10, 2021, while an appeal was pending, the parties reached a settlement and filed a joint motion to distribute the proceeds.  *See id.* ¶ 25; Dkt. 57-13 (DX-L).  The same day, TJLF sought leave to intervene, Dkt. 57-14 (DX-M), which the district court denied as untimely, *Primerica Life Ins. Co. v. Pawlik*, 2022 WL 1111019, at *3 (W.D. Tex. Apr. 4, 2022).  The court then granted the parties' joint motion to dismiss the case and directed that $850,000 of the deposited funds be disbursed to Pawlik and sent to Johns at his new firm.  Dkt. 58-9 ¶ 25.

TJLF filed multiple suits against Pawlik, who responded by filing suits of her own.  *See* Dkt. 28 (March 10, 2023 Memorandum and Order recounting convoluted procedural history).  Ultimately, all were consolidated in this Court, Dkt. 21, which denied Pawlik's motion to transfer the suits to the Western District of Texas, *see* Dkt. 28.  TJLF filed a Rule 12(c) motion for judgment on the pleadings, requesting dismissal of Pawlik's counterclaims, Dkt. 25; *see also* Dkt. 44 (amended version), which the Court granted, Dkt. 51 (adopted Memorandum and Recommendation, Dkt. 48).

In the meantime, Pawlik filed a motion for partial summary judgment. Dkt. 31; *see also* Dkt. 42 (amended motion).  Because Pawlik's motion was based on counterclaims that had been dismissed, the Court denied the motion without prejudice.  *See* Dkt. 56 (adopting Dkt. 55).

The parties then filed cross-motions for summary judgment.  Dkt. 57 (Pawlik's second motion); Dkt. 58 (TJLF's motion).  Both motions are ripe for resolution.

### Legal standard

Summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (quoting *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986)).   A fact is material if the issue it addresses "could affect the outcome of the action." *Dyer v. Houston*, 964 F.3d 374, 379-80 (5th Cir. 2020) (quoting *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010)).

When resolving a motion for summary judgment, courts must view the facts and any reasonable inferences "in the light most favorable to the nonmoving party." *Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 304 (5th Cir. 2010) (internal quotation marks omitted).   "[T]he court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party …." *Union Pac. Res. Grp., Inc. v. Rhone-Poulenc, Inc.*, 247 F.3d 574, 584 (5th Cir. 2001).   In addition, courts must credit all reasonable inferences from the evidence, without "weigh[ing] evidence or mak[ing] credibility findings." *Seigler v. Wal-Mart Stores Tex., L.L.C.*, 30 F.4th 472, 476 (5th Cir. 2022).   But "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Luna v. Davis*, 59 F.4th 713, 715 (5th Cir. 2023) (quoting *Brown v. City of Hous.*, 337 F.3d 539, 541 (5th Cir. 2003)).

## Analysis

### I.   Legal framework: An attorney's entitlement to fees after its representation of a client ends

The parties agree that Texas law governs their fee dispute. "Under Texas law, whether and how to compensate an attorney when a contingent fee contract is prematurely terminated depends on whether the attorney was discharged, withdrew with the consent of the client, or withdrew voluntarily without consent." *Augustson v. Linea Aerea Nacional-Chile S.A.*, 76 F.3d 658, 662 (5th Cir. 1996).

"[I]f an attorney hired on a contingent-fee basis is discharged without cause before the representation is completed, the attorney may seek compensation in quantum meruit or in a suit to enforce the contract by collecting the fee from any damages the client subsequently recovers." *Hoover Slovacek LLP v. Walton*, 206 S.W.3d 557, 561 (Tex. 2006) (citing *Mandell & Wright v. Thomas*, 441 S.W.2d 841, 847 (Tex. 1969)). If the attorney was discharged for cause, however, the attorney can only recover in quantum meruit. *Mandell & Wright*, 441 S.W.2d at 847.

Attorney withdrawals are different. An attorney who withdraws for good cause can "recover in quantum meruit for the reasonable value of his services." *Russell v. Henry*, 1997 WL 527264, at *5 (Tex. App.—Dallas Aug. 27, 1997, no writ) (citing *Staples v. McKnight*, 763 S.W.2d 914, 916 (Tex. App.—Dallas

9

1988, writ denied)).  But an attorney's withdrawal without good cause before the proceeding concludes "forfeits all right to compensation." *Royden v. Ardoin*, 331 S.W.2d 206, 209 (Tex. 1960) (internal quotation marks omitted); *see also, e.g.*, *Hoeffner, Bilek & Eidman, L.L.P. v. Guerra*, 2004 WL 1171044, at *7-8 (Tex. App.—Corpus Christi May 27, 2004, pet. denied) (affirming finding that attorney abandoned representation because he was unable to provide legal services to the client "and therefore forfeited all right to compensation").

If the client and attorney mutually abandon the representation, "an implied contract arises." *Diaz v. Att. Gen. of Tex.*, 827 S.W.2d 19, 22-23 (Tex. App.—Corpus Christi 1992, no writ) (citing *Young v. Tian*, 150 S.W.2d 317, 320 (Tex. App.—Galveston 1941, writ dism'd)).  In that instance, the attorney cannot recover the contingency fee, but may be entitled to recover the reasonable value of his services in quantum meruit.  *See id.* (citing *Black Lake Pipe Line Co. v. Union Constr. Co.*, 538 S.W.2d 80, 86 (Tex. 1976), *overruled on other grounds*, *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989)).

## II.   <u>TJLF has conclusively established its breach of contract claim.</u>

Against that background, the parties dispute whether TJLF has established that the Fee Agreement entitles it to a 40% share of Pawlik's recovery in the Prior Suit.  For her part, Pawlik maintains that TJLF withdrew from the representation.  Dkt. 57-1 at 7.  In that scenario, both Section IX of the Fee Agreement and Texas law would preclude TJLF from recovering the

contingency fee. *See* Dkt. 57-3 § IX; *see also Russell*, 1997 WL 527264, at \*5. TJLF, on the other hand, argues that Pawlik discharged TJLF. Dkt. 58 at 6. If true, Section VIII states that TJLF "shall be entitled to attorneys' full contingent share" of recovery in the Prior Suit. *See* Dkt. 57-3 § VIII. This is subject to the further common-law restriction that the discharge was without good cause. *See supra* Part I; *Mandell & Wright*, 441 S.W.2d at 847.

TJLF's ability to recover the full contingency fee therefore depends on (1) whether TJLF was discharged, or instead withdrew; and (2) if TJLF was discharged, whether Pawlik had good cause for doing so.[1] On this record, the evidence establishes that TJLF was discharged without good cause. Accordingly, TJLF is entitled to summary judgment that Pawlik breached the Fee Agreement. Pawlik's cross-motion on this claim should be denied.

## A.   Pawlik discharged TJLF.

The communications between Johns, Brogan, and Hernandez in late November 2020, coupled with Pawlik's directive on December 1, 2020, establish that Pawlik discharged TJLF. As of November 2020, the only TJLF attorneys who represented Pawlik were Johns, as lead counsel, and Brogan, as an associate. *See* Dkt. 58-3 ¶ 4. By that time, Hernandez and Francis had removed Johns as TJLF's manager, but Johns remained a member of TJLF.

---

[1] Pawlik did not argue that the 40% contingency fee is unconscionable.

*See* Dkt. 58-9 ¶ 12; Dkt. 58-11.  On November 20, 2020, Johns directed Brogan to withdraw from all matters with "my clients" on which she had worked with Johns.  Dkt. 58-14.  Two days later, however, Hernandez informed Brogan that the clients referenced by Johns instead belonged to TJLF.   Dkt. 57-8. Hernandez stressed that TJLF would decide whether to reassign any client to another TJLF attorney.  *Id.*  Hernandez asked Brogan for her input on whether she wished to assume the role of lead counsel on any of those cases.  *Id.*  But Hernandez authorized Brogan to withdraw as co-counsel on any matter.  *Id.*

Brogan then withdrew from the Prior Suit on November 30, 2020. Dkt. 58-3 ¶ 9; Dkt. 57-2 ¶ 17.  The next day, Pawlik retained Johns's new firm and executed an agreement directing TJLF to release her files.  Dkt. 58-16. A week later, Johns notified TJLF that he was withdrawing from the firm, in a letter he backdated to November 30, 2020.  Dkt. 58-13 at 2-3; Dkt. 58-9 ¶ 15. Yet TJLF's operating agreement required 30 days' notice for any member to withdraw.  Dkt. 58-9 ¶ 15.

The foregoing chronology reflects that Brogan's withdrawal from the Prior Suit did not constitute a withdrawal of representation *by TJLF*, as a firm. When Brogan withdrew, Johns was still a TJLF member.  So Pawlik was still represented by TJLF.  At minimum, TJLF, through Johns, represented Pawlik until she transferred her case to Johns's new firm on December 1, 2020.  Dkt. 58-16.  Only after that date did Johns notify TJLF of his withdrawal from

TJLF.  Dkt. 58-13 at 2-3; Dkt. 58-9 ¶ 15.  Notwithstanding his attempt to back-date the document, the withdrawal did not take effect until the 30-day notice period had expired.  *See* Dkt. 58-9 ¶ 15.

Moreover, Hernandez's November 22, 2020 email to Brogan made clear that TJLF, as a firm, retained the authority to determine how and to whom particular client matters handled by Johns would be reassigned.  The communication merely authorized Brogan, an associate, to withdraw "as co-counsel" if she desired.  Notably, Hernandez did not indicate that any such withdrawal by Brogan would terminate TJLF's representation of Pawlik, or any client on whose matters Johns had worked.  That issue became moot when Pawlik executed an agreement transferring her case to Johns's new firm.

Pawlik emphasizes that she had not communicated with any TJLF attorney other than Johns, and that TJLF made no effort to keep the case.  *See* Dkt. 57-1 at 7.  But Pawlik had the exclusive right to terminate TJLF's representation.  *See* Tex. Discipl. R. Prof'l Conduct 1.15(a) (requiring an attorney to withdraw if he "is discharged, with or without good cause"); *see also id.*, cmt. 4 (emphasizing the client's right to discharge an attorney at any time, "and paragraph (a) of this Rule requires that the discharged lawyer withdraw").  The fact that TJLF did not pursue the representation after Brogan's November 30, 2020 withdrawal is irrelevant, given that Pawlik's next-day letter ended the attorney-client relationship by unequivocally

13

discharging TJLF.   *Compare* Dkt. 58-16 (directing TJLF "to immediately release my file materials" to Johns's new firm and stating that she was "transferring my legal matter to" that new firm), *with Law Offices of Windle Turley, P.C. v. French*, 140 S.W.3d 407, 408-09, 413 (Tex. App.—Fort Worth 2004, no pet.) (characterizing as a discharge clients' demand for their case files and statement that they would take their case to the new firm of the departing attorney).   This evidence likewise establishes that TJLF did not withdraw from or otherwise abandon the representation.

Although Pawlik notes that the record does not indicate when TJLF learned that the representation had been transferred, *see* Dkt. 62 at 2, nothing suggests that is relevant to the analysis.   Rather, Pawlik's December 1, 2020 letter explicitly exercised her exclusive right to terminate TJLF's representation in her case.   That was a discharge as a matter of law.

## B.   No evidence indicates that Pawlik had good cause for discharging TJLF.

TJLF's discharge does not automatically entitle it to the contractual contingency fee, however.   This is because Texas law imposes an additional requirement: Pawlik must have lacked good cause for discharging TJLF. *See Mandell*, 441 S.W.2d at 847 (allowing recovery on the fee agreement "when the client, *without good cause*, discharges an attorney before he has completed his work") (emphasis added); *see also Hoover Slavacek LLP*, 206 S.W.3d at 565

(discharge without cause would entitle the attorney "to either its contingent fee or compensation in quantum meruit").

On this issue, Pawlik incorrectly asserts that TJLF bears the burden of proof. *See* Dkt. 57-1 at 8. Texas law instead makes clear that Pawlik, as the client, must prove she had good cause to discharge TJLF. *See Flores v. Gonzalez & Assocs. Law Firm, Ltd.*, 2016 WL 5845922, at *8 (Tex. App.— Corpus Christi Oct. 6, 2016, no pet.) (classifying good cause for terminating an attorney as "defensive in nature"); *Whiteside v. Hartung*, 1999 WL 548211, at *6 (Tex. App.—Houston [14th Dist.] July 29, 1999, pet. denied) (same); *Howell v. Kelly*, 534 S.W.2d 737, 740 (Tex. App.—Houston [1st Dist.] 1976, no writ) (client must "establish[ ] just cause for the termination").

### 1.   <u>The good cause standard</u>

Texas courts have not explicitly defined what constitutes good cause in this context. Pawlik's cited cases illustrate a few instances where courts have found fact issues on good cause, although most of them do not address the issue.[2] *See* Dkt. 57-1 at 8-9. Those cases hardly reflect a bright-line rule for

---

[2] *See Johnson v. Cal. Real Est. Inv. Tr.,* 912 F.2d 788, 788-89 (5th Cir. 1990) (per curiam) (affirming conclusion that termination of counsel was without good cause; client discharged counsel after receiving one settlement offer and retained a different law firm that obtained a subsequent settlement); *Sewell v. Guillory*, 2017 WL 6521067, at *1, 5 (Tex. App.—Beaumont Dec. 21, 2017, pet. denied) (fact issues precluded summary judgment on good cause for terminating counsel's representation; client sent a letter notifying counsel that he was terminating the representation, hiring another lawyer, and requested that counsel forward his file).

what qualifies as good cause. To the contrary, Texas courts have treated the good cause inquiry as a "fact issue for the jury to decide." *See French*, 140 S.W.3d at 413 & n.18 (citing *Howell*, 534 S.W.2d at 739-40, and *Staples v. McKnight*, 763 S.W.2d 914, 916 & n.1 (Tex. App.—Dallas 1988, writ denied)).

On the other hand, TJLF cites a secondary source with examples of good cause for discharging counsel. Dkt. 58 at 26 (quoting 48 Tex. Prac., Tex. Lawyer & Jud. Ethics § 1:20 (2023 ed.) ("Discharge by client")). The examples include where an attorney's license was suspended, *see Royden*, 331 S.W.2d at 209, the attorney neglected the client's case or improperly took actions without the client's consent, *see Rocha v. M.M. Ahmad*, 676 S.W.2d 149, 155 (Tex. App.—San Antonio 1984, writ dism'd) (attorney was rude to and failed to keep appointments with the client, proposed a settlement and obtained a

---

Other cited cases did not resolve whether the attorney's discharge was for good cause. *See Pettigrew v. Cedar Springs Alexandre's Bar, L.P.*, 2018 WL 1580776, at *1, 4 (Tex. App.—Dallas Apr. 2, 2018, no pet.) (declining to reach this issue); *Reynolds v. Nagely*, 262 S.W.3d 521, 529 (Tex. App.—Beaumont 2011, pet. denied) (client did not dispute that "she discharged [her attorney] without cause"); *Wythe II Corp. v. Stone*, 342 S.W.3d 96, 102, 104-05 (Tex. App.—Beaumont 2011, pet. denied) (attorney procured settlement for client before fee dispute arose; affirming denial of fee forfeiture premised on the attorney's alleged breach of fiduciary duty); *Walton v. Hoover, Bax & Slovacek, L.L.P.*, 149 S.W.3d 834, 846-47 (Tex. App.—El Paso 2004) (holding that fee agreement was unconscionable as a matter of public policy), *aff'd in part, rev'd in part*, 206 S.W.3d at 566 (agreeing that termination provision of fee agreement was unconscionable, but disagreeing that this barred recovery altogether; remanding for evaluation of evidence regarding good cause for discharge); *Agnew v. Killion*, 1999 WL 542545, at *1, 3 (Tex. App.—Amarillo July 27, 1999, no pet.) (not precedential) (attorney did not relinquish right to fees because he was constructively discharged when the client stopped communicating with him).

16

continuance of trial without client's consent, failed to request names of potential witnesses or contact expert witnesses, and told client that "they had no chance of winning and should settle the case"); *Kelly v. Murphy*, 630 S.W.2d 759, 761 (Tex. App.—Houston [1st Dist.] 1982, writ ref'd n.r.e.) (attorney filed unauthorized legal action), or otherwise "clearly and seriously breached his fiduciary duty to his client," *see Burrow v. Arce*, 997 S.W.2d 229, 245-45 (Tex. 1999) (authorizing fee forfeiture in that instance); *see also, e.g.*, *W.C. Turnbow Petroleum Corp. v. Fulton*, 199 S.W.2d 263, 264-65 (Tex. App.—Texarkana 1946, writ ref'd n.r.e.) (barring fee recovery due to attorneys' conflict of interest representing both the corporation and its officer).  But the same source cites no authority supporting its conclusion that "[a]ll other discharges are 'without cause.'" *Id.*  This is too thin a reed on which to rest an *Erie* guess, particularly when Texas courts have emphasized the fact-bound nature of the inquiry.

TJLF's invocation of fee-forfeiture cases is inapposite.  Fee forfeiture is a remedy available for an attorney's breach of fiduciary duty.  *See Burrow*, 997 S.W.2d at 245-45.  But the good cause standard embodies the broader principle that a party's contractual performance—here, the client's obligation to pay the contingency fee—is excused if its counterparty—the attorney—materially breaches its own obligations to the client.  *See Howell*, 534 S.W.2d at 740 (invoking this principle when describing the burden of proof on good cause). And an attorney's obligations speak to the adequacy of legal representation.

17

Based on that principle, an attorney's breach of fiduciary duty is sufficient, but not necessary, to provide good cause for the attorney's discharge. Rather, good cause for discharging an attorney requires evidence that the attorney either failed to or cannot adequately represent the client, or otherwise failed to fulfill the attorney's legal duties to the client.

### 2.   Pawlik failed to raise a fact issue on good cause.

Pawlik's contention that she had good cause for discharging TJLF hinges on her declaration that she "became aware of" or "learned" of certain facts concerning the disputes between TJLF's members.  *See* Dkt. 57-2 ¶ 9 (TJLF breakup and creation of Brogan, Hernandez, and Francis's new firm), ¶ 12 (TJLF's actions toward Johns), ¶ 14 (admitting she "received" the information), ¶ 16 (stating she "learned" about partnership duties during breakup or that attempted interference with her communications with counsel "were improper"), ¶ 19 (asserting she was "aware of" Hernandez and Francis's alleged actions toward Johns or that "Hernandez authorized Brogan to remove my attorney—Johns—as lead counsel from any case" before she transferred the case to Johns's new firm); *see also* Dkt. 57-1 at 9-10 (relying on these assertions).  TJLF moves to disregard these assertions in Pawlik's declaration for lack of personal knowledge.  Dkt. 60 at 8-9.

TJLF is correct that Pawlik's declaration does not reflect that she personally observed the facts surrounding the dispute within TJLF.  Facts

"learned" or acquired from others are not facts within Pawlik's personal knowledge, and thus would be inadmissible. *See* Fed. R. Civ. P. 56(c)(4) (declaration submitted "to support or oppose a motion [for summary judgment] must be made on personal knowledge"); *see also, e.g., Gibson v. Liberty Mut. Grp.*, 129 F. App'x 94, 95 (5th Cir. 2005) (per curiam) (affirming exclusion of statement that affiant "learned" of a conversation).

But Pawlik *would* have personal knowledge about why she transferred her case to Johns's new law firm. That is the heart of the good cause inquiry. On that point, however, Pawlik conspicuously fails to state that TJLF's internal dispute—or any communication between TJLF attorneys to which she alludes—*was the reason* why she moved her case. No authority permits a client to rely on *post hoc* rationalizations for a prior discharge. That would greatly undermine the good cause requirement, which strikes a balance between a client's right to choose her counsel and the need to protect an attorney "from clients who would abuse the contingent fee arrangement and avoid duties owed under contract." *See Hoover Slovacek LLP*, 206 S.W.3d at 563.

The only statement addressing Pawlik's rationale for transferring her case declares, "I ultimately decided that I wanted Johns to continue to represent me." Dkt. 57-2 ¶ 18. But the desire to continue with current counsel who has left a prior firm does not establish good cause for discharging the firm. *See French*, 140 S.W.3d at 408-09, 413.

19

The *French* case differs with respect to the sequence of events.  There, the law firm had an opportunity to solicit the clients, the Frenches, and attempt to retain their case after their attorney left the firm.  *See id.* at 408. Utilizing that opportunity, one of the firm's partners, John Kirtley, an experienced trial attorney who was board-certified in personal injury law, assured the clients that the firm "was 'perfectly capable' of handling the Frenches' case and stood ready and willing to do so."  *Id.*  Nevertheless, Mr. French decided to transfer his case to the departing attorney's new firm, due to concerns that Kirtley did not have medical malpractice experience and delays occasioned by a prior change of counsel.  *See id.* at 409.  The appellate court reversed the order granting summary judgment to the Frenches, concluding that the Frenches had not conclusively shown good cause to terminate their contract with the firm.  *See id.* at 413.

Pawlik maintains that the *French* case shows that a firm must attempt to retain a client to preserve its right to the contingency fee.  *See* Dkt. 57-1 at 9.  That is not accurate.  There, the firm simply utilized its opportunity to advocate for retaining the case before it was discharged.  Unlike the chronology in *French*, Pawlik never afforded TJLF that opportunity.  Even before Johns had resigned from TJLF, Pawlik transferred her case to another firm.

In this case, the dearth of good cause is more pronounced than in *French*. Unlike the doubts about Kirkley's expertise in handling the Frenches' suit,

Pawlik submitted no evidence that TJLF could not adequately represent her in the case.  This is true even assuming the issues of which she ostensibly was aware factored into her decision.  *See* Dkt. 57-2 ¶ 19 (listing these issues).

There is no evidence that Hernandez, Francis, and Brogan's creation of a new firm or any financial disputes within TJLF affected its members' ability to represent Pawlik.  Those attorneys' new firm was not operating at the time.[3] *See* Dkt. 58-9 ¶ 21. Notwithstanding the ongoing disputes over control within TJLF, as an *entity*, its remaining *members* were undisputedly "ready, willing, and able" to represent Pawlik.  *See id.*  Pawlik notes those members were not admitted to practice in the court where the Prior Suit was filed.  *See* Dkt. 57-2 ¶ 19.  But the admission process is largely ministerial; it does not even require that an attorney be admitted to the Texas bar.[4]  *See* W.D. Tex., L.R. AT-1(a)(1). As Hernandez explains, he, Francis, or both "could have easily and quickly obtained admission" to that court—just as Johns and Brogan did at the outset. *See* Dkt. 58-9 ¶ 21.  Nothing controverts Hernandez's position.

Pawlik also maintains that "Hernandez authorized Brogan to remove my attorney—Johns—as lead counsel from any case."  Dkt. 57-2 ¶ 19.  That flatly

---

[3] During an August 28, 2023 hearing, the parties also acknowledged that TJLF still exists.

[4] The relevant rule is available at https://www.txwd.uscourts.gov/wp-content/uploads/Documents/Local%20Court%20Rules/Attorney/AT-1%20-%20Admission%20of%20Attorneys.pdf.

mischaracterizes the record.  In the referenced November 22, 2020 email, Hernandez asks Brogan to "let us know" if there were "any cases that you are co-counsel with Mr. Johns on that you think it makes sense for you to assume the lead counsel role."  Dkt. 57-8.  At most, this email asks for Brogan's input about potential lead counsel roles.  It plainly did not grant Brogan the authority to seize such a role unilaterally, much less to do so without obtaining Pawlik's or any other client's consent.

Finally, the procedural posture here differs from *French*.  There, only the clients had moved for summary judgment, so reversal of the trial court's order granting the motion left fact issues for trial.  But here, TJLF has cross-moved for summary judgment.  Although good cause is a fact-bound inquiry, *see French*, 140 S.W.3d at 413, the summary judgment standard nonetheless requires Pawlik to present enough evidence that would allow a reasonable jury to find good cause.  *See Westfall*, 903 F.3d at 546.  Pawlik's failure to do so warrants summary judgment in TJLF's favor.

In addition, the record conclusively establishes the amount of TJLF's damages resulting from Pawlik's breach.  Because Pawlik recovered $850,000 in the Prior Suit, *see* Dkt. 58-6, TJLF is owed 40% of that amount—$340,000— as its contractual contingency fee, *see* Dkt. 57-3 §§ II, VIII.  TJLF is therefore entitled to recover $340,000 on its breach of contract claim.  Accordingly, this Court should grant summary judgment for TJLF on its claim for breach of the

Fee Agreement, award TJLF $340,000 in damages, and deny Pawlik's cross-motion on that claim.

### C. Pawlik's defenses are unsupported.

The Court also agrees with TJLF that Pawlik failed to raise fact issues on her affirmative defenses of waiver, equitable estoppel, laches, and prior material breach. *See* Dkt. 57-1 at 12-15 (Pawlik asserting waiver, estoppel, and laches); Dkt. 58 at 31-32 (TJLF's response); Dkt. 59 (Pawlik asserting prior material breach); Dkt. 61 (TJLF addressing prior material breach). Pawlik bears the burden of proving these defenses. *See O'Brien's Response Mgmt., L.L.C. v. BP Expl. & Prod., Inc.*, 24 F.4th 422, 434 (5th Cir. 2022) (prior material breach); *Energy Transfer Partners, L.P. v. Enter. Prods. Partners, L.P.*, 593 S.W.3d 732, 741 n.36 (Tex. 2020) (waiver); *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 593 (Tex. 2017) (equitable estoppel); *City of Ft. Worth v. Johnson*, 388 S.W.2d 400, 403 (Tex. 1964) (laches). But she bases them primarily on positions that the Court has already rejected.

### 1. <u>No evidence supports Pawlik's waiver defense.</u>

In Texas, "[w]aiver involves the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *Stephens v. LPP Mortgage, Ltd.*, 316 S.W.3d 742, 748 (Tex. App.—Austin 2010, pet. denied). "The elements of waiver include (1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence;

and (3) the party's actual intent to relinquish the right, or intentional conduct inconsistent with the right." *Thompson v. Bank of Am. Nat'l Ass'n*, 783 F.3d 1022, 1025 (5th Cir. 2015) (quoting *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008)).  "Where waiver is claimed by inference rather than express renunciation, it is the burden of the party who is to benefit ... to produce conclusive evidence that the opposite party unequivocally manifested its intent to no longer assert its claim." *Id.* (internal quotation marks omitted). This is a "high threshold." *See Addicks Svcs., Inc. v. GGP-Bridgeland, LP*, 596 F.3d 286, 299 (5th Cir. 2010).  "Waiver is ordinarily a question of fact, but when the surrounding facts and circumstances are undisputed, as in this case, the question becomes one of law." *See Jernigan v. Langley*, 111 S.W.3d 153, 156-57 (Tex. 2003).

There is no dispute that TJLF did not explicitly relinquish its contractual right to the contingency fee.  And the record confirms that TJLF did not give up the fee by withdrawing from its representation; instead, Pawlik discharged TJLF on December 1, 2020. *See supra* Part II.A.  Thus, TJLF's ensuing failure to contact Pawlik or advocate for keeping the case cannot show that TJLF intended to forgo the contingency fee.[5]  *See* Dkt. 57-1 at 12-13.

---

[5] If anything, Pawlik's December 1, 2020 letter acknowledges that the Fee Agreement endures; it simply (but mistakenly) asserts that its terms morphed into an agreement with Johns alone.  *See* Dkt. 58-16 (stating that Johns "will continue to represent me in accordance with the terms of the original contract I signed with [TJLF]").

Pawlik also contends that TJLF waived its right to the fee by waiting until after the Prior Suit was settled before seeking leave to intervene. *See* Dkt. 57-1 at 13.  But TJLF simply waited until Pawlik recovered proceeds to which its contingency fee could attach.  That was not clear even upon entry of the final judgment, given that the judgment was appealed.  *See* Dkt. 58-3 ¶ 14.  Once the parties announced a settlement and sought disbursement of the funds, however, TJLF immediately sought to intervene.  *See* Dkt. 57-13 (September 10, 2021 motion announcing settlement and requesting distribution of proceeds); Dkt. 57-14 (same day, motion for leave to intervene).

Regardless, the court in the Prior Suit merely ruled that TJLF's request to intervene was untimely under specific rules governing intervention.  *See Pawlik*, 2022 WL 1111019, at *2-3 (applying timeliness requirement for Fed. R. Civ. P. 24(a)(2), pursuant to *Howse v. S/V Canada Goose I*, 641 F.2d 317, 320 (5th Cir. 1981)).  As that court noted, TJLF could have sought intervention sooner.  But intervention is not the exclusive means for enforcing a contractual right to a contingency fee.  TJLF had the option to file a separate suit to recover the fee once Pawlik obtained her recovery, just as TJLF did.   More fundamentally, TJLF's lack of timely intervention does not evince a clear and unequivocal intent to relinquish its fee altogether.   No evidence supports Pawlik's waiver defense.

### 2.   Pawlik's equitable estoppel defense fails.

Pawlik's defense on equitable estoppel is similarly unsupported. "Equitable estoppel is an affirmative defense that is established when: (1) a false representation or concealment of material facts; (2) is made with knowledge, actual or constructive, of those facts; (3) with the intention that it should be acted upon; (4) to a party without knowledge or means of obtaining knowledge of the facts; (5) who detrimentally relies on the representations." *Wyde v. Francesconi*, 566 S.W.3d 890, 897 (Tex. App.—Dallas 2018, no pet.) (analyzing this defense in attorney-client fee dispute). These elements "are substantially the same as the elements of fraud." *Id.* (citing *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 524 (Tex. 1988)).

On the first element, Pawlik proffered no evidence that TJLF falsely represented or concealed any material facts regarding its contingency fee. *See* Dkt. 60 at 12 (TJLF raising this point). Contrary to her arguments, because Pawlik discharged TJLF, she was no longer TJLF's client. *See* Dkt. 62 at 4 (Pawlik presupposing that TJLF withdrew from representation). No authority indicates that TJLF had a duty to continue soliciting a client who had already moved her case away from the firm. And no authority suggests that an attorney's failure to continue pursuing a client amounts to a false representation that can provide a basis for equitable estoppel. This is doubly true because the Fee Agreement itself states, in no uncertain terms, that TJLF would still be "entitled to attorneys' full contingent share of any settlement of

26

or judgment on the claim" even if she discharged TJLF "or obtains a substitution for [TJLF] before such settlement is made or judgment is had." *See* Dkt. 57-3 § VIII.  Equitable estoppel does not apply.

### 3.      Laches does not apply.

Pawlik's laches defense is legally flawed.  As an equitable doctrine, laches does not provide a cognizable defense to a breach of contract claim.  *See Wayne v. A.V.A. Vending, Inc.*, 52 S.W.3d 412, 415 (Tex. App.—Corpus Christi 2001, pet. denied) ("The present case is a claim for breach of contract, a legal right.... We conclude that the defense of laches does not apply in this case."); *see also Fairmont Specialty Ins. Co. v. Apodaca*, 234 F. Supp. 3d 843, 850 (S.D. Tex. 2017) (applying Texas law and rejecting laches for this reason); *U.S. Rest. Props. Operating L.P. v. Burger King Corp.*, 2003 WL 21448389, at \*6 (N.D. Tex. June 16, 2003) (agreeing that "laches may not be invoked in a breach of contract case").  For that reason alone, Pawlik's reliance on laches is barred.

Moreover, the legal standard for laches is especially strict because TJLF filed its breach of contract claim within the four-year limitations period of when the action accrued, i.e., when Pawlik obtained the settlement funds. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.004(a)(4); Dkt. 58-6 (April 6, 2022 order authorizing disbursement of funds); Dkt. 1-1 (April 19, 2022 original petition).  In such a case, laches provides no defense absent "some element of estoppel or such extraordinary circumstances as would render inequitable the

enforcement of [TJLF's] right after a delay." *See Barfield v. Howard M. Smith Co. v. Amarillo*, 426 S.W.2d 834, 840 (Tex. 1968) (no extraordinary circumstances existed, despite assertions that respondent would have taken different actions had the petitioner asserted its rights sooner). As already concluded above, TJLF did not unreasonably delay asserting its right to the fee, and Pawlik fails to identify any "extraordinary circumstances" that support this defense. The laches defense fails as a matter of law.

### 4. **Pawlik's conclusory assertions do not raise a fact issue on her prior material breach defense.**

Previously, Pawlik asserted a counterclaim for negligence premised on TJLF's alleged attempt to interfere with her relationship with Johns before she transferred the case and certain actions taken after the transfer occurred. The Court rejected the negligence claim because (1) Pawlik did not allege that the alleged interference impacted the course of the Prior Suit or impeded Johns from representing her; and (2) TJLF had no duty to Pawlik after their attorney-client relationship ended. *See* Dkt. 48 at 12-16; Dkt. 51 (adopting Dkt. 48).

Pawlik now attempts to recast the same allegations as a prior material breach of contract by TJLF—but only in her response to TJLF's summary judgment motion. *See* Dkt. 59 at 22. Her arguments are conclusory and undeveloped. Nowhere does she acknowledge, much less engage the legal standard. *See Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195,

199 (Tex. 2004) (per curiam) (listing numerous factors for determining if a claimed prior breach is material). And most of her contentions are foreclosed by the analysis above. *See supra* Part II.B (Pawlik's failure to present evidence that TJLF failed to or was unable to provide adequate representation).

To repeat, TJLF did not authorize Brogan to remove Johns as counsel, much less on Pawlik's case. Rather, Hernandez sought Brogan's advice about cases on which she *could* serve as lead counsel. *See* Dkt. 57-8. TJLF also did not withdraw; it was discharged by Pawlik. *See supra* Part II.A. That terminated the attorney-client relationship, thereby foreclosing any further duties to Pawlik, whether with respect to TJLF's internal dispute or its later efforts to recover the contingency fee from Pawlik.

In addition, Pawlik presented no evidence that any actions predating TJLF's discharge deprived her of the proper representation expected under the Fee Agreement. This is key to showing the materiality of an asserted breach. *See, e.g.*, *Leonard v. Knight*, 551 S.W.3d 905, 910 (Tex. App.—Houston [14th Dist.] 2018, no pet.) ("[C]ourts consider, among other things, the extent to which the non-breaching party will be deprived of the benefit that it reasonably could have anticipated from full performance.") (citing *Hernandez v. Gulf Grp. Lloyds*, 875 S.W.2d 691, 693 (Tex. 1994)). Yet the record reflects that TJLF's attorneys, including Johns, fully represented Pawlik, including by preparing a summary judgment motion that led to a favorable ruling. *See* Dkt. 58-3 ¶¶ 5,

13; Dkt. 58-4.    With no evidence that TJLF provided inadequate representation, Pawlik cannot raise a fact issue on her prior material breach defense.  *See, e.g.*, *Leonard*, 551 S.W.3d at 910-11 (no prior material breach of settlement agreement where party's failure to dismiss a prior suit with prejudice did not deprive the other of the expected benefit of that settlement).

## III.   The disposition of TJLF's breach of contract claim forecloses the parties' remaining and alternative theories.

The recommended resolution of TJLF's breach of contract claim disposes of the parties' remaining and alternative theories.  For instance, the conclusion that TJLF was discharged without good cause forecloses Pawlik's alternative theory that the parties mutually abandoned the representation.  *See* Dkt. 57-1 at 11-12.  TJLF has also pleaded a quantum meruit claim, for "the reasonable value of its services," only in the alternative to recovering the full contingency fee under the Fee Agreement.  *See* Dkt. 38 at 6; *see also* Dkt. 58 (invoking quantum meruit as a fallback).  TJLF's entitlement to the full contingency fee, through its breach of contract claim, therefore moots its quantum meruit claim.

As a final point, the Fifth Circuit has noted the "inequitable result" of requiring a client to pay the full contingency fee to its original attorneys, when the client's new counsel will also take a portion of the recovery.  *See Johnson v. Cal. Real Est. Inv. Tr.*, 912 F.2d 788, 789 (5th Cir. 1990) (noting, in that case, the injured child "will receive less than $20,000 out of a $75,000 settlement"

30

because both the prior and current counsel will each take $25,000).  Yet the Fifth Circuit has also recognized that Texas law mandates this result.  *See id.* (observing that "[u]nless and until" Texas courts revisit their approach, "results such as this must follow").

Here, the record suggests that Pawlik failed to appreciate that transferring her case to Johns's new firm carried the risk of having to pay additional fees.  In fact, Johns advised her that transferring the case to his new firm would entail "no additional fees."  Dkt. 58-15 (PX-15, Johns's Nov. 30, 2020 email to Pawlik).  But the remedy, if any, is to dispute *Johns's* entitlement to his separate contingency fee.  Given Pawlik's failure to show that she discharged TJLF for good cause, however, Texas law requires enforcing her contractual obligation to pay TJLF the promised contingency fee.

## Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Plaintiff The Johns Law Firm, LLC's motion for summary judgment (Dkt. 58) be **GRANTED IN PART**, with respect to its breach of contract claim, and **DENIED IN PART** as moot regarding its quantum meruit claim that was asserted only as an alternative basis for recovery.

It is further **RECOMMENDED** that Defendant Angela Pawlik's cross-motion for summary judgment (Dkt. 57) be **DENIED**.

It is further **RECOMMENDED** that, pursuant to Fed. R. Civ. P. 58(a), this Court enter a final judgment awarding TJLF $340,000 on its breach of contract claim and dismissing its alternative quantum meruit claim.  As TJLF has indicated (Dkt. 58 at 34 n.57), its further request for attorneys' fees should be addressed post-judgment.

**The parties have fourteen days from service of this Report and Recommendation to file written objections.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).   Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.  *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).**

Signed on January 12, 2024, at Houston, Texas.

Yvonne Y. Ho
United States Magistrate Judge